[Cite as *State v. Wilson*, 2017-Ohio-7223.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27232 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-362 |
| | : | |
| DACOLDEST WILSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 15th day of August, 2017.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

DANIEL F. GETTY, Atty. Reg. No. 0074341, 46 East Franklin Street, Centerville, Ohio 45459
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Dacoldest Wilson appeals from from his conviction in the Montgomery County Court of Common Pleas, General Division, for aggravated robbery after the matter was transferred from juvenile court pursuant to R.C. 2152.10 and R.C. 2152.12. Wilson claims that the juvenile court abused its discretion in finding that he was not amenable to treatment in the juvenile system. He further claims that the general division trial court erred in using a prior juvenile adjudication to impose a mandatory prison term.

{¶ 2} We conclude that this record does not support the claim that the juvenile court abused its discretion in its decision to transfer Wilson's case to the Common Pleas Court. However, as conceded by the State, the general division trial court erred in sentencing. Accordingly, the judgment is affirmed in part, reversed in part, and remanded for resentencing.

## I. Facts and Procedural History

{¶ 3} Wilson was charged in the Montgomery County Juvenile Court with one count of felonious assault in violation of R.C. 2903.11(A)(2) and one count of aggravated robbery in violation of R.C. 2911.01(A)(1). The aggravated robbery count included a gang specification. The offense occurred when a woman observed Wilson attempting to drive off in her car. As the woman tried to stop Wilson, he put the car into gear and drove off causing the woman to be thrown to the ground. Wilson was 15 years old at the time the offenses were committed. The State filed a motion to transfer the case to the Montgomery County Common Pleas Court, General Division, pursuant to the

discretionary bindover provision set forth in R.C. 2152.12(B).

{¶ 4} On December 8, 2015, Wilson waived his right to a hearing and admitted there was probable cause to support the charges against him. In accordance with R.C. 2152.12(C), the court ordered a psychological evaluation and investigation to determine Wilson's amenability to juvenile rehabilitation.

{¶ 5} At the amenability hearing, the parties stipulated to the psychological report which was made a part of the record. No other evidence or testimony was presented as the parties waived the presentation of additional evidence. Upon considering the factors listed in R.C. 2152.12(D) and (E), the juvenile court concluded that Wilson was not amenable to care or rehabilitation within the juvenile system and that the safety of the community required he be subject to adult sanctions. The juvenile court certified Wlison to the adult court for prosecution.

{¶ 6} After transfer, Wilson was indicted on the same charges. Following plea negotiations, he entered a guilty plea to aggravated robbery. In exchange, the State dismissed the remaining count and specification. A sentencing hearing was conducted on August 9, 2016. The general division trial court imposed a three-year mandatory sentence upon a finding that Wilson had a prior juvenile adjudication for complicity to commit burglary that, had he been an adult, would have been a felony offense. Wilson filed a timely appeal.

## II. Bind Over Not an Abuse of Discretion

{¶ 7} Wilson's first assignment of error states:

THE TRIAL COURT LACKED JURISDICTION AS THE JUVENILE COURT

ABUSED ITS DISCRETION BY FINDING DEFENDANT NOT AMENABLE TO REHABILITATION IN THE JUVENILE JUSTICE SYSTEM.

{¶ 8} In his first assignment of error, Wilson contends that the juvenile court erred in transferring jurisdiction over his case to the common pleas court's general division.

{¶ 9} "Juvenile courts possess exclusive jurisdiction over children alleged to be delinquent for committing acts that would constitute a crime if committed by an adult." *In re M.P.*, 124 Ohio St.3d 445, 2010–Ohio–599, 923 N.E.2d 584, ¶ 11, citing R.C. 2151.23(A)(1). However, pursuant to R.C. 2152.12(B), once a complaint has been filed alleging that a juvenile has committed an act that would be a felony if committed by an adult, the juvenile court may transfer the case to adult court if it finds that (1) at the time of the offense, the juvenile was 14 years of age or older, (2) probable cause exists that the juvenile committed the act charged, (3) the juvenile is not amenable to care or rehabilitation in the juvenile system, and (4) the safety of the community may require that the child be subject to adult sanctions.

{¶ 10} Before transferring, the juvenile court must "order an investigation into the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child." R.C. 2152.12(C). R.C. 2152.12(D) lists the following factors that a juvenile court must consider in favor of transferring a juvenile to the general division of the common pleas court:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the

alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

{¶ 11} R.C. 2152.12(E) sets forth the following factors that weigh against transfer of jurisdiction, including:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act

charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or is a mentally retarded person.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶ 12} Because an amenability hearing is a fact-based assessment of individual circumstances, a juvenile court's determination regarding a child's amenability to rehabilitation in the juvenile system is reviewed under an abuse of discretion standard. *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 14. A court abuses its discretion when its decision exhibits an attitude that is arbitrary, unreasonable or unsconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 13} In this case, the record is clear that the juvenile court did consider the applicable factors. The court noted that Wilson was 15 years old at the time he

committed the offenses, and that those offenses would be felonies if committed by an adult. The court found that the victim suffered serious physical harm. Wilson was under community control sanctions for prior juvenile sanctions. Further, the court found that prior juvenile sanctions were unsuccessful in rehabiliting him. As part of these findings, the court stated:

> The reality is, this youth has had substantial involvements with our court, substantial prior felony involvement and misdemeanor involvement, substantial violations of previous court orders, and they do go back to when the youth was nine [sic] years of age.

> He's been through our intervention center 18 different times, placed on [electronic home monitoring] four different times. He has served time in our corrections facility. He's been in three different court-based residential treatment facilities.

> I'm sorry, his record began when he was eight years of age, not nine. * * * Even he acknowledges that he's had approximately 30 different charges over the last 7 years, and that is from age 8 to age 15: Receiving stolen property, burglaries, grand theft autos, joy riding, multiple AWOLs from treatment, domestic violence cases, criminal trespass, criminal damaging, and the list could go on.

> And so this Court is going to find that at the time this act took place, the youth has had multiple involvements with the Court, was, in fact, on probation at the time this matter was going. And pursuant to statute, probation is a term for community control.

The next potential consideration is whether or not there had been previous juvenile sanctions, and have those sanctions occurred successfully, and whether or not there's sufficient factors available - - or services available in the future that this Court could use to assist the child in rehabilitation and keep him in the juvenile justice system.

This youth has been on and off probation for 7 years, even though he's 15 and a half. He has had substance abuse and mental health issues in treatment. He was assigned to the intensive probation unit in 2012, received a variety of outpatient services through the Life Program and South Community. He received additional updated diagnostic assessments through Samaritan Behavioral Health, Inc.

He had all of these services when he was 12, 13, 14, and 15, but it should be noted he continued all of his delinquent behaviors, including continued drug usage, although receiving treatment for it multiple times, and including multiple new charges.

One of the quotes from the therapist that - - is "upon record review, it is clear the client has made little to no effort to improve his behaviors."

He has, and his family have, received multiple therapeutic services, including the DAYS program for alcohol and drug treatment and education. He was part of NYAP, the National Youth Advocate Program, who address sexual issues displayed in the academic setting. He continued to act out in all areas of his life, continued to come and go as he pleased from his home.

At age 13, because of all the prior treatment options that have been used, he was sentenced to Center for Adolescent Services "due to his lengthy serious criminal history and AWOL history."[1]

He's been treated at CAS three separate occasions: [August 15, 2013 through December 27, 2013; January 13, 2014 through April 21, 2014, and May 20, 2014 through June 30, 2014], and in each of those cases because he was in CAS, got out and immediately picked up another charge or immediately did something else wrong which got him back in there, which made him continue to have to return there.

While at CAS, he had eight major discipline infractions, including four code red infractions and violations. He engaged in multiple fight[s], disrespectful to staff, and had various items in his possession that would be considered inappropriate.

He again continued to receive additional charges. This Court then used the treatment options of sending him to JCARE * * *.[2] He was there twice. * * *

He received treatment at JCARE [from] November 14, 2014, just about six months after he got out of CAS, to February 11, 2015. He got out of JCARE, then, of course, committed more crimes, went back from

---

[1] The Center for Adolescent Services ("CAS") is a secured residential facility.

[2] JCARE is the Juvenile Cognitive Alternative Rehabilitation Effort corrections program within the Montgomery County Juvenile Court Detention Center, and is designed to provide treatment and interventions for high-risk male youths who would otherwise be committed to Ohio's Department of Youth Services.

March 16th of 2015 to June 10th of 2015.  * * *

He was home between February 11th of 2015 to March 16th of 2015 [in between commitments to JCARE].  During that period of time while at home, he was suspended from school for fighting, didn't show up for office visits with his probation officer, and never showed up for community-based services for the work program.  He was asked to make a poster for the Montgomery County Drug Coalition event.  Again, another attempt to try to give him services.  He showed up at the event high, court sponsored event, and tested positive for marijuana.

He was detained on additional charges after that, for receiving stolen property, F-4, on July 10th of 2015.  * * * He continued to receive additional treatments and every service this Court has available for every youth in the court system.  * * * In the last possible attempt, he was sent to the Nicholas Residential Treatment Center on August 18th of 2015.  The youth didn't last a day.  The Court would note that the client's mother did not show up for an intake appointment, and he ran away that same day.

A warrant was issued.  He hid out in this community; with or without the support of his family * * * until he was picked up on his current pending charges.

{¶ 14} The court went on to find that Wilson is emotionally, physically and psychologically mature enough for transfer.  The court further found that there is not sufficient time to rehabilitate Wilson in the juvenile system.  The court noted that Wilson's attorney argued that Wilson had yet to be sent to the Ohio Department of Youth Services

which, the attorney claimed, should be tried before transfer. However, the court noted that CAS is "a facility very similar to DYS. This youth has been there three times, and each of those have failed." The court also noted that Wilson refused to accept responsibility for his actions.[3] Further, the court noted that while Wilson was in the juvenile detention center he threatened staff, and even attempted to throw urine on a staff member. Finally, the court stated that there were no factors set forth in R.C. 2152.12(E) that were applicable.

{¶ 15} On this record, we find that the juvenile court did consider the appropriate factors and that there is a rational and reasonable basis in support of its findings regarding those factors. Thus, we cannot say that the court abused its discretion by deciding to transfer Wilson's case for trial as an adult.

{¶ 16} Accordingly, the first assignment of error is overruled.

### III. Mandatory Sentence Inappropriate

{¶ 17} Wilson asserts the following for his second assignment of error:

THE TRIAL COURT'S THREE YEAR MANDATORY SENTENCE WAS IMPOSED IN VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHTS OF DUE PROCESS.

{¶ 18} Wilson contends that the general division trial court erred by finding that it was required to impose a mandatory prison term. Specifically, he argues that the use of a prior juvenile adjudication for complicity to commit burglary, an offense that would be a second degree felony if committed by an adult, to enhance his sentence from a non-

---

[3] The record indicates that Wilson was laughing during the amenability hearing.

mandatory to a mandatory prison term violates his due process rights.

{¶ 19} The Supreme Court of Ohio has held that it is unconstitutional to use a juvenile adjudication as the equivalent of an adult conviction to enhance a penalty for a later crime, because, unlike an adult conviction, a juvenile adjudication does not involve the right to a trial by jury. *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, ¶ 38. In so holding, the court struck down R.C. 2901.08(A), a statute which specifically provided that a prior "adjudication as a delinquent child or as a juvenile traffic offender is a conviction for a violation of the law or ordinance for purposes of determining the offense with which the person should be charged and, if the person is convicted of or pleads guilty to an offense, the sentence to be imposed[.]" *Id.* at paragraph one of the syllabus and ¶ 9. Noting that juveniles are not afforded the right to a jury trial, the court stated that "a juvenile adjudication is not a conviction of a crime and should not be treated as one." *Id.* at ¶ 38.

{¶ 20} The record indicates that the court imposed a mandatory prison term for the offense pursuant to R.C. 2929.13(F)(6), which provides for a mandatory sentence when a defendant is convicted of a first-or second-degree felony and "previously was convicted of or pleaded guilty to * * * any first or second degree felony[.]" The State concedes, and we agree, that pursuant to *Hand*, the general division trial court erred in imposing a mandatory prison term for Wilson's count of aggravated robbery.

{¶ 21} Accordingly, the second assignment of error is sustained.

## IV. Conclusion

{¶ 22} The first assignment of error being overruled and the second assignment of

error being sustained, the judgment is affirmed in part, reversed in part, and remanded for resentencing.

. . . . . . . . . . . . .

HALL, P.J. and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Daniel F. Getty
Hon. Gregory F. Singer